May it please the Court, Robert Rosati for Plaintiff and Appellant Richard Gordon. I'd like to reserve three minutes for rebuttal. This is an ERISA benefits case. It's a narrow issue whether the acts or omissions or deeds of a plan administrator can reset the clock on what would appear to be an otherwise time-barred claim. Obviously our position is that it can, and they did, and their position is that it can if it didn't. Facts, the essential facts are quickly stated. Gordon filed a claim. They granted the benefits. At some point they terminated benefits. Then they terminated, they gave her an appeal. In response to the appeal, they gave her a few months' worth of benefits and offered her another appeal. This was in November of 2003. Gordon did not file a timely appeal. Four years later, she asked them to reopen her claim. They said no. At that point, if they had stayed on saying no, they would be perfectly correct. In 2009, six years later, Gordon filed a complaint with the Department of Insurance. In this context, MetLife is no longer relating to Gordon as a planned fiduciary because her benefits have been terminated, and there's no reasonable argument that she would otherwise be entitled to benefits. But in response to the DOI complaint, MetLife agrees to open her claim again. They do not condition that reopening in any context. They say we will reconsider your claim. Had they said we will not reconsider your claim, they would have been perfectly justified, but they may have been sanctioned by the Department of Insurance. They may not have resolved their complaint. Had they said we will not, we will reconsider your claim voluntarily, but you're time-barred, and we won't let you sue if we decide not to allow you to pursue this further or not give you benefits, they would have been justified under Martin, but they would not necessarily have resolved the Department of Insurance complaint. Isn't there another option, too? They could have said we're going to reopen it, and you can file an appeal? I mean, they didn't say that either. Well, they ultimately said she could. And again, the course of conduct demonstrates their actual intention on it. Well, I guess I don't understand how something as old as this can be somehow magically resuscitated six years, seven years later. Because they chose to. But where in the record does it say they chose to do that as opposed to they chose to respond to a request from a state agency? Well, there was a request from a state agency. Their response could have been no, we do not reopen the investigation. I understand that, and instead they reopened it. Right. And you're saying the burden was on them to say, oh, by the way, the reopening is limited. I'm saying several things. Yes, had they said, and I appreciate the defense wants a bright line. There is a bright line. Had they said we will reopen, but you're time barred, you can't file suit, maybe they don't resolve the DOI complaint. So they didn't say that. But second, when you look at the actual course of conduct that occurred when they reopened, it was clear that their intent was to unconditionally reopen the claim. They didn't at any time say that the claim was time barred, and they had multiple opportunities to do so. They told her we will provide a new medical review. They told her you can submit new medical evidence. The record in the aftermath of reopening the claim is far greater than the record prior to the reopening of the claim. There were at least four medical reviews conducted by MetLife. Gordon submitted thousands of pages worth of documents. This was a brand-new claim. That was a really old one, to go back to Judge Sedgwick's point. What prevented your client from bringing this claim years earlier? I think she was mentally distraught and just gave up. What concerns me about your argument, counsel, is it seems to me that insurance companies aren't perfect either, and sometimes they make mistakes, and I'd be very concerned about a ruling from our court that would discourage an insurance company from going back to look at a claim to see if they goofed. And I agree, but this isn't a question of them just going back to see if they goofed. They could have said that. This is a question of them giving a quid pro quo. They got something of value. The claim was already, in my hypothetical, the claim's already dead. The statute of limitations says already run. Then the question is can they revive a time-barred claim? California law recognizes that, in fact, a time-barred claim can be revived. The United States Supreme Court has held in the Johnson case that, in fact, when you borrow the statute of limitations from the state, you also borrow tolling and revival standards. What is it they did that breathed new life into the statute of limitations exactly? They agreed to rehear the case. They accepted new evidence. When you said rehear, of course, that's a verb that's different for us. So you mean take another look at? They agreed to reopen the claim and take another look at it, and, in fact, they did. Okay. What else? Then in representations to her, they said when they first, when she submitted her own appeal in 2009, they responded and said, no, we don't have a, we're not going to change the claim. This was on December 8, 2009. They told her she had 180 days to submit another appeal, and they said we will decide the appeal within 45 days, and if we need more time, we'll decide it 45 days after that. And they said if we deny the appeal, you may sue us. Now, at this point, there are a series of representations by MetLife which clearly indicate that, in their mind, this is a pending claim. It's not time barred. This is an open claim to which Gordon has the right to pursue remedies on the merits. Okay. So I'm still waiting for an answer. Is it, what act is it that breathed new life? Is it that letter? It is opening all of them together. The initial act is reopening the claim in response to the DOI complaint. Would that have been enough? Yes, because under the concept, it depends on what legal theory you pour the facts into, and we've presented four different legal theories. One is revival. Under the theory of revival, that's enough, because they got something of value. The California law is clear that revival can occur on a time barred claim. And in this case, there was a clear quid pro quo. We gave you something, you gave up something. Therefore, even though it was time barred under California law, this claim now starts new. The Ninth Circuit has held, or the U.S. Supreme Court has held, that you can adopt the revival standards. I see no reason why, equitably, that would not be applicable here. But more to it, as we progress, and obviously we're not stopping there, as we progress through the processing of the claim, there are additional issues raised. They make additional representations. They're not clearly a fiduciary. If their intent was, this is a time barred claim, we're just giving you a courtesy review, they had the duty to say so. Everything they do once they reopen the claim, they do as a fiduciary. They have affirmative obligations to tell Gordon the facts, and they have an affirmative obligation not to misrepresent the facts. Had they intended not to reopen the claim, had they intended this to be a time barred claim, they had a duty to tell her. So based on principles of estoppel, waiver, accrual, they clearly did not so assert. Remember, if you look at the actual record of the case, most of the record of the case is developed in the aftermath of the reopening of the claim. And at no time in that time period did MetLife ever say, your case is time barred. So from my perspective, these sequence of facts places MetLife in the position where they've agreed, I mean they've waived any claim that they claim is time barred. They're stopped to assert it because they never asserted it. And even within the context of Nijntzuka case law about asserting post-back-to-the-fact rationalizations, they had the opportunity at multiple steps to say, this is a courtesy review, but you can't sue us. Additionally, within the context of the general parameters of reviewing a case that otherwise would be time barred, there are a number of cases that MetLife cites for the proposition that, in effect, a courtesy review doesn't reopen the claim. But this wasn't merely going back and looking at the records that had already been collected. This was, again, they solicited, they obtained almost 1,000 pages of new records. They got four additional medical reviews. Their conduct clearly demonstrated that this was a new claim with a new time frame. And I think that Gordon has the right to rely upon. Let me ask you this. Are you saying that California law would have revived this claim? Yes. I think it's pretty clear that when an arista claim accrues is a matter of federal law, not state law, even though the statute of limitation has been borrowed from the state. But you're telling me that reviving a claim somehow is not going to be a matter of federal law. It'll be a matter of state law. The Supreme Court said that in Johnson. You wouldn't disagree with the proposition that the accrual is a matter of federal law? The accrual is a matter of federal. So we've got a difference, in your view, between accrual and revival. Right. Accrual. And in this case. I know they're different concepts, but it seems odd to me that we, as a federal court, would look to our law as to when something accrues, that is, when you've got it and can proceed with it, and yet would look to somebody else's law as to whether or not it's been revived. That seems odd to me. Can you point to any case that discusses that oddity? I agree that it's odd and it makes no sense, but it's the law that the courts have created for a reason, because it has no statute of limitations. Does that mean the answer to Judge Sedgwick's question is no? I have no cases that explain that oddity. And perhaps the case pending in the Supreme Court will resolve it, but I doubt it. There's a Heinsdorf case pending on the issue of accrual. And, again, there's a tension. There's an inherent tension. But even in the context of accrual, Your Honor, in the cases that this Court has developed on accrual, once they reopen the case, isn't it obvious at that point that it's not a final determination? They could have said no. And, again, for the Court's perspective, if MetLife had said, no, we won't reconsider you, we wouldn't be here. If MetLife had said, no, we will consider it as a courtesy, but we won't accept new evidence, and you can't sue us, we wouldn't be here. What they said was, we'll reopen the case. And you said the last thing, you said, and you can sue us. And you can sue us. They actually wrote her a letter. Where does it say that? Could you tell me? It's in the 12809 letter, which I can give you the cite to. Hold on one second. I think. Okay. I guess I'm looking at it. It says. I was looking at the May 2009 letter. It says what? The 12809 letter says, if that excerpts 286 to 289, MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after you receive your written request for appeal. If there are special circumstances requiring an additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing. In the event your appeal is denied in whole or in part, you will have the right to bring a civil action under Section 502A of the Employee Retirement Income Security Act of 1974. This was written to her, or to me, actually, on December 8th, or to her. I wasn't representing her yet, on December 8th, 2009. And in response to that, we submitted an additional appeal. Had they not told her she could sue, I think they still would be barred by, I mean, the revival would still stand. But they clearly understood, in the context of what was happening here, that this was an open new claim. That whatever had happened before, in terms of time bar, was stopped. They made an explicit representation that she could sue them. And their position now is, never mind, we were lying. You have to look at that representation in the context of their obligations as a fiduciary. Isn't their position not, never mind, we were lying, isn't their position she could bring the ERISA claim, but they weren't waiving all their defenses, and one of them is a statute of limitations defense? Where did they say that? They didn't. Had they said... They said they were lying either, counsel, but that was your representation. It is my representation. But I'm not trying to just joust with you, but in the December 2009 letter, I think that's where you're hanging your hat. And it seems to me what they did say is that they were informing her, they were denying the claim for benefits, and that she could bring a civil action under ERISA if her appeal was denied. Right. So she submitted another appeal. In other words, she submitted a claim in June, then she submitted another appeal, and when MetLife failed to act on that appeal, we filed suit. The context of all these actions, at no time did they say, you may not sue us, and the representation that you can sue us, it's already time-barred. If it's time-barred, what's the meaning of the representation that you can sue us? How is it consistent with the fiduciary? And, again, at this point they're acting clearly in a fiduciary context to say, you can sue us, but you're time-barred. If she was time-barred, she couldn't sue, not materially. They understood by their actions, by their words, by their failure at any point to assert that she couldn't sue, that they weren't going to consider other than a courtesy review. They understood that they completely reopened the claim, and that the case was revived. Any time-bars were passed. And, again, to be consistent with the court's rulings in Mitchell and Harlech about asserting claims administratively, they, of course, knew all the facts that would support a time-bar, and yet at no time, in no communication with her, did they ever say, you're time-barred. If we're going to apply administrative procedure and ERISA standards consistently, you have to say that when you know the facts, the employer, the administrator, has an obligation to assert them in a denial. And they never did at any time. They clearly understood that they weren't, that they were waiving the time limitations, and that was ultimately the quid pro quo for reopening, for resolving the DOI complaint. Wait, I don't understand the quid pro quo. They could have given her a courtesy review. You just said that. They could, but maybe that wouldn't have resolved the DOI complaint. Where does the quid pro quo come into it? I don't understand. They got something of value. They could have done that with a courtesy review, correct? Maybe not. Oh. Why do you say that? Because. Are you saying that once they agree to reopen, they have to give her a right to sue? No, no. I'm saying that once they responded to the Department of Insurance by saying we will reconsider her claim. They didn't say we will reconsider her claim but not give her the right to sue. I'm asking you, if they had done that, would that have been satisfactory? I don't know, because it didn't happen. Well, all right, but then it does seem to me you're almost saying that the state agency basically has told the insurance company they can't rely upon the statute of limitations. No. The state agency has said that if you want, it's conceivable that the state agency may have said that that's adequate, but it didn't have the opportunity because MetLife didn't propose it. If you were the lawyer for the insurance industry involved in this sort of litigation, you would say, well, the simple thing you have to do is just say we'll reopen it, but you can't appeal it. Yes, that's what Martin, that's what this court held in Martin. We'll reopen it, but you can't appeal it. And maybe the Department of Insurance says that's not good enough, in which case you deal with the complaint and the investigation by the DOI, but you don't deal with Gordon. Maybe that's what happens. But they got something of economic tangible value by reopening this claim, and their position is we can take something of economic tangible value, but we don't have any responsibility for that. I think you're overplaying that card, though, because it's not at all clear that they couldn't have done what you would have just suggested. We'll reopen it, but you can't appeal it. But it is clear that they didn't do it. Well, I understand what you're saying. And in the subsequent communications. And, again, they had ample opportunity. There was numerous communications between Metlife and Gordon and her lawyer, me, about this case. At no time, there is never a communication saying, but this is just a courtesy review. And, again, the context of a courtesy review is we're looking at the old evidence. They acquired 1,000 pages of new evidence. They did four medical reviews. They knew it wasn't a courtesy review. They knew they were starting this again. That's why they did four reviews. Attributing what Metlife knew to Metlife. Is there any place we should look in the record other than the December 2009 letter to divine Metlife's intent? Sure, from their acts and their communications. There are several letters. Okay. Which other letters? Well, it's primarily those two, but there are also several others. Sorry, forgive me, but which two? December 2009 and which other one? The May 5, 2009, the December 8, 2009. And then there are several smaller letters where they're notifying the Department of Labor of what they're doing. They're granting extensions of time. They're asking for commentary on, I mean, it's the whole course of events. Is there any correspondence from your team, from your side, expressing an intent that the claim had been reopened for all purposes that you would have expected Metlife to correct? Is that in the record? Your Honor, I submitted a 74-page appeal, and I wrote them letters saying, if you don't decide this appeal, I'm going to sue you. They never responded. But have you given us that? Yeah, it's part of the- I'm looking at the-I'm trying to make sure that I have everything in front of me when I decide what this course of communication- The statement of facts that we submitted in opposition to the summary judgment motion lists all of those, but it's- All right. That's where you want me to look? Sure, yes. Okay, I've read it, so thank you for your comments. Thank you, counsel. Thank you, Your Honor. We'll give you a couple minutes for rebuttal. Good morning, Your Honors. May it please the Court, my name is Ian Linker, Metropolitan Life Insurance Company, on behalf of the Apelli Deloitte & Touche LLP Group Long-Term Disability Plan. Robert Renner of the firm Barger & Wolin is also here on behalf of the plan. Could you start by telling me the thing that bothered me the most, and that is the letter in December, was it, 2009, in which your client says that if we deny this claim that we have reopened, you will be able to sue us. What's the explanation for that? The explanation, Your Honor, is that under federal regulations, in an adverse benefit determination letter, the claim fiduciary is required to provide a statement that the claimant is entitled to bring a cause of action under ERISA. Now, the entitlement to bring a cause of action is not the same thing as whether that individual has a meritorious claim in litigation. No, no, I'm not saying whether it's meritorious. I'm saying whether you can bring it, but it's barred and they can't ever proceed to litigation. Well, Your Honor. I don't think that's the case. The claim personnel administering the appellant's claim in 2009 are looking at very limited pieces of information. They're looking at whether the medical provided and the other information provided are sufficient to support whether, under the terms of the benefit plan, that individual is entitled to benefits under the plan. The reason why, in 2009, MetLife decided or agreed to reconsider Ms. Gordon's claim wasn't because the Department of Insurance had sent it. That doesn't seem to me to address the question. The question is, if you tell them that they are entitled to bring a claim, knowing that the claim is barred by the statute of limitations, does that then have no effect? You mean we told you you can bring a claim that you really can't bring because it's barred? Claims personnel aren't sitting at their desks, Your Honor, deciding what to do. It doesn't mean what we say because our personnel aren't very effective and make representations that aren't true. That's not an answer to say, well, we don't really have the best knowledgeable personnel. But that's your explanation of why you told them that she could file a suit knowing that she couldn't? Well, I would submit that the claims personnel who were administering her claim were not aware of what litigation defenses the plan could later assert against Ms. Gordon should she decide. So the answer is that the personnel who did this weren't knowledgeable about the fact that she couldn't bring the suit. What I am submitting, Your Honor, is that they are not lawyers, that they were unaware of what defenses could later be asserted against her. Well, then how did they know that she could file a complaint at all if they don't know what the law is? Well, they understand that ERISA regulations require that they put a statement in their determination letters that the individual is entitled to bring a cause of action. And as Your Honor is well aware, simply because one can bring a cause of action doesn't mean that individual is entitled to the relief he or she seeks from that. So they put that in a letter every time they deny a claim? For adverse benefit determinations that are governed by ERISA, they put that at least as long as the regulations have required that that statement appear in the determination letters. Does the regulation require anything else? Well, the regulations require many things, Your Honor. I don't mean that regulation, counsel. Does it require that the applicant or potential beneficiary be informed of anything else? The regulations to which I spoke require the claims fiduciary put a statement regarding appeal timeframes into their determination letters, as well as the statement that I referred to earlier that they have a right to bring an action and the time in which they can bring an appeal and also the time that the fiduciary will make a determination. Thank you. You're welcome. But before I proceed, I wanted to just address something that opposing counsel stated in his argument. He had mentioned that the appellant had contacted MetLife in 2007, more than four years after the November 2003 determination letter, which told Ms. Gordon that her claim would be denied and that she was not entitled to any additional benefits under the plan. In 2007, November 2007, she called up and asked whether she could have her claim reopened. Now, opposing counsel said in his argument that MetLife said no. That's not entirely true. What they told her was that her appeal would be untimely if she had attempted to submit one at that particular point in time. But they had also told her that if she had new evidence that she claimed she had, she could submit it at that particular point in time, along with a written explanation as to why her appeal was so untimely. That was in 2007. MetLife did not again hear from the appellant until it received a Department of Insurance complaint in 2009, more than one year after. So it's not that they said no. They invited her to submit additional medical. For whatever reason that we are not aware of, she declined that invitation. So opposing counsel also stated had they done the courtesy review at that time, that we wouldn't be here today. We wouldn't be having this argument about whether the limitations, provisions have been magically resuscitated. At that point in time, the courtesy review would have been a courtesy review and nobody would have batted an eye about it. Now, the other point that's also very telling is this issue that resolution of the Department of Insurance complaint somehow constituted consideration, something of value. Opposing counsel points to no evidence that MetLife could not have resolved the Department of Insurance complaint simply by stating she had 180 days to appeal under the regulations, that she did not submit a timely appeal. She waited more than four years before she even contacted the company to ask whether she could reopen her claim. There's nothing in the record to indicate that the Department of Insurance complaint would not have been resolved by that statement. But Ms. Gordon, in her Department of Insurance complaint, said that she had additional medical information that she wanted to have considered by MetLife, and MetLife agreed at that point in time to consider that additional evidence, just as it did in 2007 when she was already time barred. MetLife has a duty to administer claims in accordance with the terms of the plan. Had the information she provided in 2009 demonstrated an entitlement back to 2003 when MetLife denied the claim that she was entitled to those benefits, we also wouldn't be standing here because MetLife would have reversed its determination,  but because it is a fiduciary and because it is administering claims in accordance with the terms of the plan, it had done as a courtesy to agree to accept this new information and reconsider the appellant's claim. You know, that's the other part. Another question that bothers me is you say there is this category of courtesy complaints that can courtesy review, meaning it's not a legal obligation or we're not really doing anything, we're going to take a look at things. But you don't say we're going to conduct courtesy review. Instead, what you say is we have, this type is so small, and we'll be reopening your claim for review, for further review. Now, it seems to me if there are two categories of things, one a courtesy review and one is reopening the claim, what justifies telling the customer we're reopening the claim and then coming to court and saying that we were conducting a courtesy review, we weren't reopening the claim? Because as a claims fiduciary had the information she provided in 2009, supported an entitlement to benefits dating back to 2003, then MetLife would have approved the claim and paid benefits, even though as a litigation defense the plan had the issue of limitations, that she had filed the lawsuit more than four years past the date of the initial denial under the statute of limitations and more than three years with respect to the contractual limitations. I understand that. It's a long time. You wouldn't reopen the claim, but you did. And then you tell her we reopen your claim and you can sue if you lose. And then you come in and say, you know, I'm not expressing a final decision. I'm telling you what bothers me. Sure. And that is that you tell her you're reopening the claim, not conducting a courtesy review, and then you tell her that the notice that you can sue doesn't really mean, it means you can file a claim, but it's clearly of no merit because you can't proceed with it. You can, you know, when I was practicing law I used to say anybody can file a complaint. All you need is $37. By now it must be $3,700. But to say anybody can file a complaint isn't the same as your adversary saying, sure, you can file a complaint. If you said, sure, you can file a complaint, but you won't get past the first day, to me that's somewhat misleading. But when you put the two things together it says we're going to reopen your case and we're going to take new evidence, and then we'll tell you if you lose you can sue. That is somewhat partisan, but I can understand, I know your answer, which is, you know, that well, we told them we're going to reopen it, but that doesn't mean anything. It only means that it's a courtesy, and that it's a courtesy review. It's really not a reopening. And then we'll tell them you can sue if you disagree with the result, but you really can't. Those are the two things that bother me about the case. I understand, Your Honor. When MetLife agreed to administratively reopen the claim, we would submit that that is a separate issue than whether the appellant had a legitimate cause of action in court. So MetLife agrees to reopen administratively the claim in 2009, not something that it had to do. In 2009, her cause of action was already time barred. It was already time barred in 2009. No problem. That's the only reason we're talking about the effect of reopening it. Sure. But in her briefs, the appellant has pointed to no authority under ERISA that would justify reviving the limitations periods at issue in this case. Did she argue any detrimental reliance? She argued in Estoppel. She argued that Estoppel would apply in this case, Your Honor. No, my question is different. Did she argue detrimental reliance? I don't recall. She relied to her detriment on the December 2009 letter. That is her argument. But the plan would submit that she did not rely or could not have relied to her detriment on the 2009 letter because she was already out of time. There was no detrimental reliance. She was not harmed in any way. And that is, as Your Honor indicates, an element of Estoppel. There must have been detrimental reliance. But because she was already out of time to have a meritorious cause of action, there could have been no harm. There could have been harm in relying on it and incurring, I would assume, substantial legal expenses. Well, I mean, again, she still had the right to file the lawsuit, but I don't know as a claims fiduciary under the plan, represented by a sophisticated ERISA lawyer that met life a claims administrator. You know, claim administration personnel sitting at their desks administering claims would have been required to advise opposing counsel about the statutes of limitations and the effects of the contractual limitations provisions on claims that are late, very late, as the case is in this particular instance. Let me ask you a slightly different question. It's clear that the evidence that was presented originally could have been the subject of an appeal. There's a process in place that allows several levels of review. Now, there's a whole lot of new evidence that came in here. I don't know how significant it is, but there's a lot of it. And provision of that evidence might have been detrimental to reliance itself. You had to gather it all together and present it. But why is that new evidence not also entitled to some sort of multilayered review? Just because it's new, it shouldn't have it? Well, when MetLife reconsidered the claim in 2009, it provided her with an additional appeal right. It had determined that under the plan the information that she had provided was insufficient to entitle her to additional benefits under the plan. And so it had invited her to submit an appeal from that point in time. And she did? And she did. That's correct. And the next question is then why couldn't that then be taken to the court? I mean, you want to sort of establish which levels of appeal she's allowed to have. She could have one within the company but not without. I'm not sure I'm following your question, Your Honor. I'm not making myself very clear. But she submitted new evidence. Yes. And a decision was made. Yes. And you told her she could appeal that to within the company, within your procedure. And she did do that, correct? That is correct. But then when you get to that point, you say that's the end of the rope. After that appeal in 2000, she submitted an appeal in 2010 through counsel, before MetLife had an opportunity to complete its review. Now, keeping in mind that these voluntary reviews that are outside the plan are not subject to ERISA's time frames, at least according to the Eleventh Circuit's recent Harvey decision and a Tenth Circuit decision called Hancock v. MetLife that was rendered in 2009, MetLife didn't complete its review at that point. So I guess she would have had ‑‑ she brought the suit before MetLife, excuse me, before MetLife completed its administrative determination. I'm not sure if that addresses your question. But there's a strong policy argument issue that needs to be addressed. And as this Court recognized in the Martin case referred to earlier by opposing counsel, the policy at issue there is we want claims fiduciaries to reconsider claims. We want them to do this. And if this Court decides that MetLife's agreement to do that in 2009 magically resuscitates this cause of action, we would be putting a real damper on this process of claims fiduciaries agreeing to reconsider these claims when they don't have an obligation to do it. They don't have an obligation at that point to reconsider it. It could have just said, you know what, we're wiping our hands clean, you are four years too late, and we're just simply not going to consider your claim. If Your Honors have no further questions, the plan respectfully requests that you affirm the district court's decision. Thank you. Just a couple of points. On the issue of filing suit, MetLife hasn't decided one of my appeals in time and years. We have a form letter that runs nine pages that lists the cases where they refuse to decide appeals, even the ones they do decide are always out of time. They just don't. You have to ask them why. I don't know why. They don't tell me why. In this case, we wrote them letters saying, please decide this appeal, and they wouldn't. We told them we would sue them if they wouldn't decide the appeal, or at least tell us when they would decide it, and they wouldn't respond. They gave us no choice, and that's the common pattern. They simply do not respond. The second issue is the policy issue. Yes, there's a legitimate policy issue that allows plan fiduciaries to reopen claims. They have a simple answer. We will reconsider your facts or any new facts you want to submit, but if you're out of time, you're out of time. There's no imposition, no detriment to them by saying that. And they could have said that consistent with Martin, and they would not have reopened the claim. But when they, by their acts or deeds or omissions, again, they're fiduciaries in this context. If they're meaning to say you're time out and you can't come into court, they should say that. This court has ruled to that extent repeatedly. We're communicating with each other. I guess the point is if this court says otherwise here, in the future they'll always say that. Sorry, you're out of time. They might. They might not. Well, we would be telegraphing that that's the only way to avoid reopening the statute of limitations, wouldn't we? You would be telling them how to avoid reopening the statute of limitations, and you'd be giving them a bright line, and that would be perfectly legitimate. They should have bright lines where they can conform their conduct. All right. So the policy argument then is that we would have, in effect, put an end to whatever you want to call them, courtesy reviews or alternative reviews? Well, but you wouldn't be the first one so stating. There's a Seventh Circuit case called Briggs v. Edwards and Stratton, or Edwards v. Briggs and Stratton, where the appeal was submitted 11 days late and the plan said, no, we won't consider it. You're out of time. And the court, the Seventh Circuit, affirmed. You're late. We don't have to consider it. It's not new to claimants. Well, what would be new is not having these alternative reviews, that Briggs case didn't involve an alternative review. That was a simple statute of limitations claim, right? Right. That was a simple failure to timely file an appeal. All right. That's a different issue than the policy argument. Right. But here, we've already, this court has already spoken on the question of courtesy reviews. That was Martin. In Martin, they gave the man a courtesy review and they told him, but your statute is time-barred and if we don't grant your courtesy review, you have no place to go. And the man agreed. It's right in the record. So this isn't new. This is a 20-year-old case on that fact. We're not changing the rules. We're simply applying the rules that we've stated before. And unless the court has any other questions. Thank you very much, counsel. Thank you. The case just argued will be submitted.
judges: Sedwick, Reinhardt, Christen